ISMAIL J. RAMSEY (CABN 189820)
United States Attorney

KATHERINE L. WAWRZYNIAK (CABN 252751)
Acting Chief, Criminal Division

KAITLIN PAULSON (CABN 316804)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, CA 94102-3495
    Tel.: (415) 436-6824
    Fax: (415) 436-7234
    Kaitlin.Paulson@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>  v.<br><br>JAMES MORAN,<br><br>    Defendant. | Case No. 3:22-cr-193 VC<br><br>**UNITED STATES' SENTENCING MEMORANDUM**<br><br>Date: June 28, 2023<br>Time: 1:00 p.m.<br>Court: Hon. Vince Chhabria |

## INTRODUCTION

The government respectfully submits this memorandum for the sentencing of defendant James Moran. Moran pleaded guilty to one count of receipt of child pornography, in violation of 18 U.S.C. §§ 2252(a)(2) and (b) (Count 1). Pursuant to the plea agreement, the government recommends a term of imprisonment of 140 months, 15 years of supervised release, a fine to be determined by the court, a special assessment of $5,100.

## FACTUAL BACKGROUND

The government generally agrees with the facts as set out in the Presentence Investigation Report ("PSR"), but provides the following summary for the Court's benefit.

## I. OVERVIEW

In June 2020, police learned that a nine-year-old female minor victim ("Victim 1") had sent self-produced sexually explicit photos via Snapchat to someone later determined to be James Moran. Moran threatened and coerced Victim 1 to continue sending images, such as by threatening to expose Victim 1's conduct to her parents and to send Victim 1's parents the sexually explicit images Victim 1 had previously sent Moran. Victim 1 complied until she herself informed her parents of the conduct, who then informed law enforcement. All told, Moran possessed at least 30 child pornography images of Victim 1. [PSR ¶¶ 8, 28]

During the course of the subsequent investigation, law enforcement officers discovered that Moran communicated on social media and messaging applications—including Snapchat and Kik—with numerous females, many of whom identified as underage minors, some as young as ten years old. In these chats, Moran solicited—successfully, at least in some cases—sexually explicit images. [PSR ¶¶ 12, 13, 26, 27; Plea ¶ 2(d)]

Moran also interacted with others online about obtaining, providing, and/or trading child pornography. For example, Moran solicited and paid for links to child pornography videos. On at least three occasions, Moran provided to another Kik user sexually explicit images of Victim 1. [PSR ¶¶ 23–25]

At the time of his arrest, Moran possessed over 4,000 child pornography images and over 50 child pornography videos on his phone, both of which included depictions and videos of minor females under the age of seven—including some as young as what appears to be four or five—being vaginally and orally penetrated by adult penises. [PSR ¶ 28; Plea ¶ 2(d)]

## II. THE INVESTIGATION

The investigation commenced following the self-reporting of Victim 1 of her interactions on Snapchat with the user later identified as Moran. Victim 1's parents informed local law enforcement, who tracked Moran to San Francisco. From there, officers with the San Francisco Police Department continued the investigation, located Moran and, on February 11, 2021, arrested him and searched his person, residence, and electronics pursuant to a warrant. Moran was also interviewed, after being read and acknowledging his *Miranda* rights. In the interview, Moran confirmed his cell phone number,

which matched the number associated with the Snapchat user who obtained sexually explicit images from Victim 1. Moran also confirmed he owned a cat; Victim 1 reported that, during a video call she had had with Moran, she observed an orange cat in his room. Officers observed an orange cat at Moran's residence when executing the search warrant. Finally, Moran was wearing a unique belt buckle when he was arrested. Law enforcement had seen that belt buckle before—in a picture saved to the target Snapchat user's account. The picture showed an adult male penis coming out of a pants fly, with the unique belt buckle visible. One of the other pictures saved to the account was a picture of Moran's face. [PSR ¶¶ 8–10, 20–22]

During the execution of the search warrant, SFPD detectives seized an iPhone from Moran. On the iPhone were numerous chat conversations between him and individuals purporting to be minors, as well as evidence that Moran used his Snapchat and Kik accounts to solicit images and videos from them. Moran also interacted with others online about obtaining, providing, and/or trading child pornography. For example, Moran solicited and paid for links to child pornography videos, focusing on prepubescent females. On at least three occasions, Moran provided to another Kik user nude and/or sexually explicit images of Victim 1. In total, Moran possessed over four thousand child pornography images and over fifty child pornography videos on his iPhone. Over thirty of the sexually explicit images were of Victim 1. Moran also possessed numerous videos of Victim 1. Numerous photos and videos Moran possessed depict prepubescent females, likely under the age of 7 and some as young as four or five, being vaginally and orally penetrated by adult male penises. [PSR ¶¶ 23–28; PSR ¶ 2(d)]

### III. MORAN'S ONLINE COERCION OF FEMALE MINOR VICTIMS

Moran's *modus operandi* appears to be pretending to be a young male and talking to female minors on Snapchat and Kik. By feigning romantic interest as a male peer, Moran would gain the trust of his victims. He then would reach to them, persuade them to take photos—including sexually explicit photos—and to send those images to him. Moran received these photos, from Victim 1 and others.

For example, while pretending to be a young male, Moran contacted Victim 1 on social media and commenced a relationship, calling Victim 1 his "gf" or girlfriend. Victim 1 informed Moran that she was nine years old. Moran gave Victim 1 instructions to take photographs of herself, which Victim 1 did. At least 30 of the resulting images were sexually explicit, which strongly indicates that Moran

provided direction on how and what Victim 1 was to do in the images. After some time, Victim 1 indicated that she no longer wished to send Moran photographs of herself. When she did, Moran threatened and coerced her into sending additional photographs. For example, the following exchange occurred:

| | | |
|---|---|---|
| Moran: | | Babe |
| Victim 1: | | STOP CALLING ME BABE |
| Moran: | | Ok should I tell your parents |
| Victim 1: | | Tell my parents what |
| Moran: | | Ummmm |
| Victim 1: | | What |
| Moran: | | I want to be your bf and I don't want to have to text your parents |
| | | You would get in big trouble I know how to get a hold of your parents but I won't because I still love u |
| Victim 1: | | No you don't love me you never did and |
| | | Even if you did call him I wanna get in trouble because I will tell them that you asked for nudes all the time |
| Moran: | | I do love you omg |
| | | You just don't love me back |
| Victim 1: | | I am blocking you and deleting snap chat |
| Moran: | | Ok, if you do that I will send all ur nudes to your dad… |
| | | I don't want to but u are leaving me no choice |
| | | If u want me to then I will |
| | | God I still love you I don't want to hurt u |
| | | Sorry about last night I was just mad didn't mean it |

[PSR ¶¶ 12, 26–27; Plea at ¶ 2(a)–(c)]

In another instance, Moran attempted to convince a Kik user—who stated that she was twelve years old—to send images to Moran. The Kik user refused, stating that she did not want her parent to

learn that she sent images. In another instance, Moran directed a ten-to-twelve-year-old female minor to send pictures of herself to his email address. He sent her a picture of a thirteen-year-old boy, indicating that the boy was Moran. The user sent pictures of herself at Moran's request. [PSR ¶¶ 26–27]

Moran also sought, received, and sent child pornography online using Kik messenger. For example, on March 8, 2020, a user offered Moran sexually explicit videos of minor females, including females aged eight to twelve, to which Moran responded: "Got anything newer, ive seen most of those." The user asked if Moran was "into" "teens or younger one," to which Moran responded: "Both just newer." The Kik user sent a screenshot of videos bearing file names that indicated they were child pornography videos in a Mega account. Moran sent money to the user and the user sent Moran a Mega link. [PSR ¶ 24]

In another instance, Moran engaged with a different Kik user about "trad[ing] pics." Moran stated: "15 and under or we are done here." While the images the other user sent were unviewable from the extraction report, Moran did send several sexually explicit images to the user, including one of Victim 1. [PSR ¶ 25]

Based on the government's investigation, Moran received child pornography as early as March 8, 2020, through at least December 2020. [PSR ¶¶ 24–25]

## GUIDELINES CALCULATION

In the plea agreement, the parties agreed that U.S. Sentencing Guideline § 2G2.2 applied. Plea ¶ 7.[1] As such, the base offense level was 22. U.S.S.G. § 2G2.2(a)(2). The parties agreed that the material involved a prepubescent minor or minor who had not attained the age of 12, resulting in an enhancement of two levels. U.S.S.G. § 2G2.2(b)(2). The parties also agreed that the conduct involved use of a computer or an interactive computer services, resulting in an enhancement of two levels.

---

[1] The government recognizes that the PSR applied the cross reference at § 2G2.2(c)(1), which provides that 2G2.1 is used to determine the offense level because it results in a higher offense level. PSR ¶46. The government stands by the use of § 2G2.2, which the parties agreed upon in the plea agreement, and bases its sentencing recommendation on the total offense level established therein. Plea ¶ 7.

U.S.S.G. § 2G2.2(b)(6).  The parties agreed that the conduct involved 600 or more images, resulting in an enhancement of five levels.  U.S.S.G. § 2G2.2(b)(7)(D).  The parties agreed that the government would be allowed to seek a five-level enhancement pursuant to § 2G2.2(b)(5) (pattern of activity involving the sexual abuse or exploitation of a minor), which would increase the offense level by five levels, and Moran would be free to oppose it.  [Plea ¶ 7]

The parties agreed that a three-level reduction for acceptance of responsibility was warranted, so long as Moran "continue[s] to manifest an acceptance of responsibility through and including the time of sentencing."  [Plea ¶7(c) (citing U.S.S.G. § 3E1.1)]

Accordingly, the parties agreed that, if the Court determines the § 2G2.2(b)(5) enhancement applies, the adjusted offense level is 33.  If the Court determines that the § 2G2.2(b)(5) enhancement does not apply, the adjusted offense level will be 28.

## MORAN ENGAGED IN A PATTERN OF SEXUAL ABUSE OR EXPLOITATION, SO THE U.S.S.G. § 2G2.2(B)(5) ENHANCEMENT APPLIES HERE

In the plea agreement, the parties agreed that the government would be allowed to seek a five-level enhancement pursuant to § 2G2.2(b)(5) (pattern of activity involving the sexual abuse or exploitation of a minor), which would increase the offense level by five levels, and Moran would be free to oppose it.  [Plea ¶ 7]  The government seeks the enhancement here.

I  Legal Standard

Section 2G2.2(b)(5) provides: "If the defendant engaged in a pattern of activity involving the sexual abuse or exploitation of a minor, increase by 5 levels."  The commentary describes the "pattern of activity" as:

> any combination of *two or more* separate instances of the sexual abuse or sexual exploitation of a minor by the defendant, *whether or not* the abuse or exploitation (A) occurred during the course of the offense, (B) *involved the same minor*, or (C) *resulted in a conviction for such conduct*.

The commentary provides a definition for "sexual abuse or exploitation," which includes three categories, including, among others, "conduct" described in a number of statutes, including 18 U.S.C. § 2422 – Coercion and Enticement.  The commentary specifically excludes possession and receipt from the definition of sexual abuse or exploitation.

Section 2422(b) of Title 18 (Coercion and Enticement) provides, in turn:

> Whoever, using the mail or any facility or means of interstate or foreign commerce, . . . knowingly persuades, induces, entices, or coerces any individual who has not attained the age of 18 years, to engage in prostitution or any sexual activity for which any person can be charged with a criminal offense, or attempts to do so, shall be fined under this title and imprisoned not less than 10 years or for life.

The elements of 18 U.S.C. § 2422(b) are as follows:

1. The defendant used a facility or means of interstate commerce to knowingly persuade, induce, entice, or coerce a person to engage in sexual activity;
2. That if the sexual activity had occurred or based upon the sexual activity that occurred, the defendant could have been charged with a criminal offense under the laws of the United States, or a state; and
3. The individual the defendant persuaded, induced, enticed, or coerced was under the age of 18.

*See* Ninth Circuit Model Jury Instruction 8.192A (Using or Attempting to Use the Mail or a Means of Interstate Commerce to Persuade or Coerce a Minor to Travel to Engage in Prostitution or Sexual Activity) (September 2022); *see also United States v. McCarron*, 30 F.4th 1157, 1162 (9th Cir.), *cert. denied,* 143 S. Ct. 388 (2022).

As the Ninth Circuit has recognized, Congress intended § 2422 to have broad reach, "encompassing both misdemeanors and felonies," and adding the expansive "any" before "sexual activity." *United States v. Shill*, 740 F.3d 1347 (9th Cir. 2014). The production of child pornography, as well as attempted production, are acknowledged as qualifying sexual activity. *United States v. Wolfenbarger*, 464 F. Supp. 3d 1147, 1154 (N.D. Cal. 2020) (applying the § 2G2.2(b)(5) pattern of activity enhancement at sentencing).

The elements of the production of child pornography are, in turn:

1. The victim was under the age of 18 years;
2. The defendant employed, used, persuaded, coerced the victim to take part in sexually explicit conduct[2] for the purpose of producing a visual depiction of such conduct; and
3. [*inter alia*] the defendant knew or had reason to know that the visual depiction would be mailed or transported across state lines.

---

[2] "Sexually explicit conduct" means, among other things, actual or simulated sexual intercourse or lascivious exhibition of the anus, genitals, or pubic area of any person. 18 U.S.C. § 2256(2).

United States' Sentencing Mem.  
3:22-cr-193 VC

7

18 U.S.C. § 2251(a); *see* Ninth Circuit Model Jury Instruction 8.181 (Sexual Exploitation of Child).

## II.     Analysis

As such, the five-level pattern enhancement applies where a defendant engages in (1) a pattern of activity of (2) sexual abuse or exploitation, such as coercing minors to produce child pornography.

Here, both requirements are met. Taking the requirements in reverse order, Moran engaged in sexual exploitation of minors, by coercing minors—such as Victim 1—to produce child pornography. For example, as Moran himself admitted in the plea agreement, Moran "was able to get Victim 1 to send numerous sexually explicit images. . . . [Moran] threatened or coerced Victim 1, such as by telling Victim 1 [Moran] would disclose to Victim 1's parents other sexually explicit images Victim 1 had previously sent [Moran]." All told, Moran received over 30 sexually explicit images of Victim 1. [Plea ¶ 2(c)-(d); PSR ¶ 28(e)]

As such, the elements of coercion and production of child pornography are met: Moran used a means of interstate commerce—communicating with Victim 1, who told Moran she was nine years old, using Snapchat. Moran persuaded, induced, enticed, and/or coerced Victim 1 by cajoling her with his romantic ruse and coercing her with threats of exposure to her parents, to produce sexually explicit images of herself. Nine-year-old Victim 1 then sent the images of herself to Moran by phone or iPad.

And this was not a one-off, as evidenced by the over 30 sexually explicit images of Victim 1 Moran possessed.[3] Per the enhancement's commentary, a pattern can exist ***even if there is but one "same victim,"*** just so long as there are "two or more separate instances" where Moran coerced that one victim. Here, the number of images Moran possessed of Victim 1 provides overwhelming evidence that Moran actively engaged in a pattern of inducing, persuading, or coercing Victim 1 to produce and provide him with the contraband images.

While the pattern with Victim 1 is sufficient to satisfy the enhancement requirements, there are other examples the Court can also rely upon to establish Moran's pattern of sexual exploitation. As

---

[3] Moran suggests in his sentencing memorandum that "the PSR documents two reported images of the Minor Victim that implicate § 2256." Dkt. No. 44 at 13. This is incorrect. The PSR provides detailed descriptions of two of the sexually explicit images of Victim 1 found on Moran's phone, but in the same paragraph, states that "***[o]ver 30 child pornography images of Minor Victim #1***" were found on Moran's phone. [PSR ¶ 28(e)]

United States' Sentencing Mem.                        8
3:22-cr-193 VC

Moran himself admitted to, Moran engaged in multiple conversations with other individual who he believed to be minors. [Plea ¶ 2(d)]  Moran induced or coerced other minor females on Kik to produce sexually explicit images, to varied success. [PSR ¶¶ 26–27]  Even if Moran was not successful in obtaining a contraband image, it does not matter—what matters is that he attempted to produce child pornography.  This Court has held that Section 2422(b)'s "criminal offense element may include attempt crimes, such as attempted production of child pornography. *United States v. Wolfenbarger*, 464 F. Supp. 3d 1147, 1154 (N.D. Cal. 2020) ("Accordingly, the Court has 'little doubt that Congress intended the phrase 'a criminal offense' to include' attempt crimes, such as attempted production of child pornography." (citation omitted)).  Simply because Moran may not have been successful in some instances coercing other minors to produce child pornography does not absolve him from his attempts to have the minor produce the images.  As such, his conduct with these other minor females adds to the already overwhelming amount of evidence that Moran engaged in a pattern of activity involving the sexual exploitation of multiple minors.

Finally, as the commentary sets out, a pattern of sexual exploitation can occur even when it did not "result[] in a conviction for such conduct."  It is the government's understanding that Moran's position on this enhancement is that, due to the fact that he pleaded guilty to receipt and not enticement, that this enhancement does not apply because receipt is specifically excluded from the enhancement. This is incorrect.  No conviction for coercion is needed to establish the pattern of sexual exploitation enhancement.  Instead, the facts that Moran himself admitted to and that the PSR identified more than amply support the application of this enhancement.  Here, the government respectfully requests that the Court apply the five-level sentencing enhancement pursuant to § 2G2.2(b)(5) (pattern of activity involving sexual exploitation of a minor).  If the Court applies this enhancement, the total offense level will be 33, after credit for acceptance of responsibility.

## SENTENCING RECOMMENDATION

As described above, the government contends that the Total Offense Level is 33, after credit for acceptance of responsibility.  The government agrees with Probation that Moran's Criminal History Category is I. [PSR ¶ 64][4]  This yields a Sentencing Guidelines range of 135-168 months'

---

[4] The PSR notes that the government objects to the criminal history category, but the issue the

imprisonment. The government has considered the factors set forth in 18 U.S.C. § 3553(a) and believes that a custodial sentence of 140 months is sufficient, but not greater than necessary, to fulfill the needs of sentencing.

A significant custodial sentence is appropriate for Moran due to the exploitative, extensive nature of his offense. Moran victimized young and vulnerable minors. With Victim 1, Moran attempted to isolate her and prevent her from turning to family as he pulled her deeper into his sphere of influence, establishing power over her using the age-old tactics of fear and shame. It is only because Victim 1 had the courage to face the consequences and own up to her own conduct that led to the discovery of Moran, who was also engaged in similar exploitative ploys with multiple other minor females. What's more, Moran weaponized social media and messaging applications to cast a wide web for his victims online, enhancing his destructive reach. Moran, as a grown man, then-married and a business owner, used deceptive, manipulative methods to exploit vulnerable children online. The conduct has had untold and lasting effect on at least Victim 1 and her family, and possibly others. It is reprehensible conduct, as Moran himself has acknowledged, and should be punished accordingly.

To avoid prolonged litigation, and in recognition of the need to protect very young victims from the trauma of facing and testifying against Moran, the government entered into a plea agreement with Moran, in which the government is permitted to recommend a sentence within the range associated with the Guidelines calculation set out above. [Plea ¶ 16] The government believes 140 months is appropriate in this case. The sentence will sufficiently serve the interests of specific and general deterrence, punishment, incapacitation, and rehabilitation. This recommendation, which comes in at the lower end of the range, reflects that Moran agreed to plead guilty swiftly and has since shown remorse for his conduct, including receiving mental health help.[5]

---

government initially raised has since been resolved. The government has no remaining objections to the PSR.

[5] It is concerning to the government that Moran, while on pretrial release, commenced a romantic relationship with a woman who has three children from other relationship(s), ages 9, 13, and 16. [PSR ¶ 80] Given Moran's underlying conduct and apparent sexual interest in prepubescent children, it gives the government great pause that Moran may have regular association with children unrelated to him in these age ranges. In his sentencing brief, Moran is also objection to participating in sex offender-specific treatment. Dkt. No. 44 at 20. Such an objection raises the specter of a failure to accept the serious issues Moran faces regarding his sexual preferences, or is an attempt to brush them under the rug. This should not be allowed to happen. While the PSR specifies that the new partner "is aware of

This recommendation is also appropriate in light of the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. 18 U.S.C. 3553(a)(6). This recommendation is consistent with other sentences ordered by this Court, such as *U.S. v. Christopher Raymond Campbell*, 3:22-cr-319 VC, Dkt. No. 39 (sentencing defendant with CHC I to 150 months' imprisonment); *United States v. Johnny Ray Wolfenbarger*, 16-cr-519 LHK, Dkt. No. 470 (sentencing defendant with CHC I to 210 months' imprisonment). For example, in *Campbell*, the Court sentenced the defendant to 150 months' imprisonment, as the parties proposed pursuant to a C-plea. The in the two cases are similar, where both defendants used deception to lure multiple young female minors to provide sexually explicit images to the defendant. Both defendants coerced the minor victims to continue producing sexually explicit images. One difference, however, is that in *Campbell*, the defendant exhibited a degree of sadism not apparent in this case. The same is true of *Wolfenbarger*.[6] Accordingly, the government recommends a lower sentence than what it agreed to in *Campbell* and proposed in *Wolfenbarger*. A sentence of 140 months' imprisonment for Moran will avoid unwarranted sentencing disparities among defendants with similar records.

## **CONCLUSION**

For all these reasons, the government respectfully requests that the Court approve the parties' plea agreement and sentence Campbell to a term of imprisonment of 140 months, fifteen years of supervised release, a fine to be determined by the Court, a special assessment of $5,100 per felony count, and restitution to be determined by the Court.

---

Moran's current pending case," the government would like the Court to verify that the partner is aware of the specific facts of the pending case, including the ages of Moran's victims. This set of circumstances—where it appears that Moran may have direct, physical contact with prepubescent children—also weighs in favor of sentencing Moran to a 15-year term of supervised release and requiring the sex offender treatment.

[6] In addition, in *Wolfenbarger*, the defendant also received an enhancement for obstruction of justice, unlike this case.

| | |
|---|---|
| Dated:  June 21, 2023 | Respectfully submitted, |
| | ISMAIL J. RAMSEY<br>United States Attorney |
| | _/s/ Kaitlin Paulson_<br>KAITLIN PAULSON<br>Assistant United States Attorney |